Filed 7/24/23  Walgreen Co. v. Anest CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| WALGREEN CO., | C097574 |
| Plaintiff and Respondent, | (Super. Ct. No. 21CV00269) |
| v. | |
| CHRISTINA P. ANEST, | |
| Defendant and Appellant. | |

Defendant and appellant Christina P. Anest was employed by plaintiff and respondent Walgreen Co. (Walgreens).[1]  When she was hired, she signed an agreement pursuant to which Walgreens would immediately pay her a $35,000 incentive payment, but if she failed to remain continuously employed for three full years, she had to repay the entire amount.  Anest left Walgreens before completing three years of employment,

---

[1]     Plaintiff and respondent is identified as "Walgreen Co." in the papers and as "Walgreens" in the agreement that lies at the heart of this case.  We refer to it as Walgreens throughout.

1

and when she failed to repay the incentive payment, Walgreens sued her for breach of contract. Walgreens then moved for summary judgment and the trial court granted the motion and entered judgment against Anest. Anest appeals and we affirm.

## BACKGROUND

Anest was hired by Walgreens in May 2016 as a pharmacist. When she was hired, she was offered a $30,000 sign-on bonus incentive payment and a $5,000 relocation incentive payment (she lived in Los Angeles at the time and relocated to the Chico/Redding area for the position), subject to the following terms and conditions:

> "1. To avoid any repayment obligation with respect to the incentive payment, Pharmacist must remain continuously employed by Walgreens . . . for a period of 3 full year(s) of actual service (the 'required employment period'). . . .

> "2. If Pharmacist leaves Walgreens (for any reason) before completely fulfilling the required employment period, then Pharmacist must repay Walgreens the entire incentive payment amount ('repayment obligation'). Partial completion of the required employment period will not reduce Pharmacist's repayment obligation. . . .

> "3. By accepting the incentive payment Pharmacist authorizes Walgreens to satisfy Pharmacist's repayment obligation with any amounts owed by Walgreens to Pharmacist . . . . Any remaining repayment obligation balance must be repaid in full within thirty (30) calendar days after request by Walgreens. If not timely repaid, then the entire unpaid balance shall be increased by a penalty of 8% per year . . . . [¶] . . . [¶]

> "5. This Agreement is not a contract or guarantee of employment for a definite period. As always, either Pharmacist or Walgreens may terminate the employment relationship for any reason, at any time, with or without cause or notice (i.e., 'at-will')."

In June 2016, Anest accepted the offer by electronically signing the agreement and checking a box attesting she "accepts and agrees to all of the terms and conditions set

forth in this Incentive Payment Agreement,"[2] and Walgreens paid her the incentive payment, with payroll taxes deducted.

Anest was terminated in February 2018 (we are not told why), after 21 months of employment, which triggered her obligation to repay the incentive payment. In March 2018, Walgreens sent her an invoice for $32,322.50 ($35,000 less $2,677.50 for FICA payments that Walgreens was obligated to pay). When Anest failed to pay the invoice in full, Walgreens filed a complaint against her for breach of contract and a common count (money had and received), and it ultimately filed a motion for summary judgment. At the time the summary judgment motion was filed, Anest had made some payments, and Walgreens asserted she still owed it $27,890.51 pursuant to the terms of the agreement.

In opposition to the motion, Anest, who represented herself, argued: the agreement was void and unenforceable because Walgreens had effectively altered its terms by characterizing the incentive payment as a loan in its motion papers; she did not breach the agreement; Walgreens breached the agreement by terminating her; requiring her to repay the incentive payment would be tantamount to an employer collecting wages previously paid, in violation of Labor Code section 221; and Walgreens could not substantiate the amount it claimed she owed.

The trial court granted the motion, finding the following facts were undisputed and established Walgreens was entitled to judgment: (1) Walgreens hired Anest in May 2016, and her employment was terminated in February 2018; (2) in connection with her employment, Walgreens offered Anest $35,000 in incentive payments subject to the terms and conditions quoted above, and she accepted the offer; (3) a month after she was

---

**2**      There were actually two separate agreements—one for the sign-on bonus incentive payment and one for the relocation incentive payment. The terms of both agreements were identical. The parties do not discuss the agreements separately, and we thus frequently refer to the "agreement" in the singular and to a single $35,000 incentive payment.

terminated, Walgreens sent her an invoice for the full amount owed; and (4) taking into account amounts she had already repaid, she still owed $27,890.51. On December 1, 2022, judgment was entered in favor of Walgreens against Anest in the sum of $27,890.51. This appeal followed.

## DISCUSSION

This case comes to us after the trial court granted Walgreens' motion for summary judgment. "We review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.) Thus, "We may affirm the summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court." (*Drake v. Pinkham* (2013) 217 Cal.App.4th 400, 406.) Although our review is de novo, that does not mean we ignore the trial court's decision. Instead, that decision is presumed correct, and the appellant has the burden of affirmatively establishing reversible error. (*Swigart v. Bruno* (2017) 13 Cal.App.5th 529, 535.)

We begin by noting that Anest is representing herself. A self-represented party, however, "is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys." (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210.) That means Anest is subject to all applicable rules of appellate procedure and briefing, including the rule that judgments and orders are presumed correct, and it is the appellant's job to affirmatively demonstrate error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006)

4

138 Cal.App.4th 396, 408.)  "[A]n appellant is required to not only cite to valid legal authority, but also explain how it applies in his case."  (*Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10.)  " '[O]ne cannot simply say the court erred, and leave it up to the appellate court to figure out why.' "  (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237.)  Appellate courts thus may, and ordinarily do, "disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he [or she] wants us to adopt."  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.)

Before turning to Anest's arguments, we note that written incentive payment plans that are contingent on an employee remaining with an employer for a specified amount of time are generally enforceable.  In *Neisendorf v. Levi Strauss & Co.* (2006) 143 Cal.App.4th 509, for example, the court upheld an annual incentive plan (AIP) that provided, " 'Unless termination is due to retirement, layoff, long-term disability or death, a participant must be an active employee of the company on the payment date in order to receive an AIP payment,' " and " 'If an employee is involuntarily discharged (e.g., poor performance or misconduct) prior to the AIP payment date, that employee will have no right to AIP.' "  (*Id*. at p. 521, italics omitted.)  The court held an employee's "*eligibility for bonus payments is properly determined by the bonus plans' specific terms and general contract principles*.  California courts have consistently characterized bonus and profit-sharing plans as constituting an offer of the stated benefits in exchange for the service of an employee, and upon the employee's completion of the required services *in accordance with the terms of the plan*, a binding contract is formed under which the employer is obligated to deliver the promised benefits."  (*Id*. at p. 523, first italics added.)  Because the plan only obligated the employer to make bonus payments if the employee was an active employee of the company on the payment date, and because the employee was terminated before the payment date, the court held she was not entitled to any bonus.  (*Id*. at p. 524.)  In so holding, the court also noted there was no public policy in California

that prohibited such plans. (*Id*. at p. 522; accord *Lucian v. All States Trucking Co*. (1981) 116 Cal.App.3d 972, 974-976.)

Our Supreme Court has also upheld such plans. In *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, for example, it upheld a plan pursuant to which employees could elect to receive a percentage of their annual compensation in restricted company stock that could not be sold or transferred for two years. If a participating employee left the company before the end of the two-year period, they forfeited both the stock and the percentage of their annual compensation used to pay for the stock. (*Id*. at pp. 614-615.) The plaintiff enrolled in the plan and elected to receive 5 percent of his annual compensation in restricted stock. He left the company before the end of the two-year period, and then sued the employer, arguing the forfeiture of the percentage of his annual compensation used to purchase the stock violated various Labor Code provisions requiring the prompt payment of all earned wages when an employee is terminated or resigns. (*Id*. at p. 615.) Our Supreme Court disagreed. It explained: "Incentive compensation, whether in the form of a traditional cash bonus program or a more complex restricted stock plan, is generally understood as an ' "inducement to employees to procure efficient and faithful service." ' [Citation.] Eligibility to receive incentive compensation 'is properly determined by the . . . plans' specific terms and general contract principles.' [Citation.] While '[t]he public policy in favor of full and prompt payment of an employee's earned wages is fundamental and well established . . .' [citation], 'nothing in the public policy of this state concerning wages . . . transforms [a] contingent expectation of receiving bonuses into an entitlement' [citation]. *Only when an employee satisfies the condition(s) precedent to receiving incentive compensation, which often includes remaining employed for a particular period of time, can that employee be said to have earned the incentive compensation*." (*Id.* at p. 621, italics added.) Because the plaintiff did not remain with the company for the full two-year period, he " 'did not

6

earn—and thus had no right to receive—either the restricted stock or the funds used to purchase it.' " (*Ibid*.)

With this legal background in mind, we address Anest's arguments in the general order in which they are made.

### A.     *Anest fails to demonstrate any material facts are disputed*

Anest first argues she disputed almost all of Walgreens' proffered undisputed material facts—which is at least nominally true.  It is not enough, however, merely to state that a particular fact is disputed.  Instead, for "[e]ach material fact contended by the opposing party to be disputed," that fact "shall be followed by a reference to the supporting evidence" that demonstrates there is a dispute.  (Code Civ. Proc., § 437c, subd. (b)(3); see also *Bacoka v. Best Buy Stores, L.P.* (2021) 71 Cal.App.5th 126, 131, fn. 1 ["Opposition separate statements must cite to facts and evidence for the evidence to be considered by the court"].)  "Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion."  (Code Civ. Proc., § 437c, subd. (b)(3).)

Here, the trial court found the critical facts noted above were undisputed, and Anest fails to either discuss or analyze the trial court's findings, or demonstrate that the trial court erred in finding the critical facts were undisputed.  We find the facts relied on by the trial court are effectively undisputed.  By way of example, the trial court found it was undisputed that Walgreens offered Anest a $30,000 sign-on bonus incentive payment and a $5,000 relocation incentive payment pursuant to a written agreement, and that Anest accepted the offer by electronically signing the agreement.  Walgreens supported this fact by copies of the agreements themselves, which show they were electronically signed by Anest on June 14 and 15, 2016.  Anest did not dispute either the terms of the agreements or her acceptance of those terms.  Indeed, she cited the agreements with her opposition papers, and acknowledged she entered into the agreements.  Instead, the only

7

thing Anest disputed was the way Walgreens referred to the incentive payments in its moving papers—namely, as loans, which we address below.

B. *The provision requiring Anest to repay the incentive payments does not violate Labor Code section 221*

Anest suggests (albeit with no discussion or analysis) that requiring her to repay the incentive payments would violate Labor Code section 221, which provides, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." We disagree. To see why, we analogize the incentive payments in this case to advances on commissions, which courts have held may be recouped by the employer if the conditions for payment are ultimately not met. *Steinhebel v. Los Angeles Times Communications, LLC* (2005) 126 Cal.App.4th 696 provides a good example. The plaintiffs in that case worked for the Los Angeles Times newspaper as telesales employees. Telesales employees telephoned prospective customers to sell them newspaper subscriptions, and they were paid a commission for each new subscription they sold. (*Id*. at p. 700.) In order to earn the commission, the customer had to keep the paper for a minimum of 28 days, and if the customer did not keep the paper for 28 days, no commission was earned. Rather than waiting the full 28 days to pay the commission, however, the newspaper paid commissions in advance. The employment agreement provided, " 'Even though an order is not commissionable until the customer keeps it 28 days, The Times will pay you two weeks in advance for the order.' " (*Id*. at pp. 702-703.) If the customer ended up cancelling the subscription before 28 days, the agreement provided " 'the amount advanced in respect to [that] subscription will be deducted from your compensation payable subsequent to the date of such rejection . . . and *you hereby authorize* such deductions.' " (*Id*. at p. 702.) A group of employees sued the newspaper, arguing that this charge-back or recoupment provision violated Labor Code section 221. The trial court disagreed and granted the newspaper's motion for summary judgment, and the appellate court affirmed.

8

As relevant here, the court agreed that while commissions are wages, the right to a commission "must be governed by the provisions of the Agreement" and those "terms must be met before an employee is entitled to a commission." (*Steinhebel v. Los Angeles Times Communications, LLC, supra*, 126 Cal.App.4th at p. 705.) Pursuant to the terms of the agreement, the right to a commission was contingent on the customer keeping the subscription for at least 28 days. Unless and until this condition was met, the employee had not earned a commission. The court then explained, "The essence of an advance is that at the time of payment the employer cannot determine whether the commission will eventually be earned because a condition to the employee's right to the commission has yet to occur or its occurrence as yet is otherwise unascertainable. An *advance*, therefore, by definition is not a *wage* because all conditions for performance have not been satisfied." (*Id*. at p. 705.) The court thus held the agreement did not violate Labor Code section 221 because that section "prohibits an employer only from collecting or receiving wages that have already been earned by performance of agreed-upon requirements." (*Steinhebel*, at p. 707; see also *Koehl v. Verio, Inc.* (2006) 142 Cal.App.4th 1313, 1329-1337 [holding similar commission plan did not violate Lab. Code, § 221].) In other words, an employer can advance wages to an employee before they are earned, and if the employee does not actually earn those wages, the employer may recoup the amount advanced without running afoul of Labor Code section 221.

Although this case involves an incentive payment rather than a commission, we find *Steinhebel*'s reasoning equally applicable here. Walgreens essentially agreed to pay Anest her bonus in advance. Anest's right to that bonus, however, was conditioned on her remaining continuously employed for three years. If she failed to remain employed for three years, she never earned the bonus, and, pursuant to the terms of the agreement, she was required to repay it. As in *Steinhebel*, we find the agreement in this case does not run afoul of Labor Code section 221.

9

*C.    Referencing the incentive payments as "loans" did not render the agreement unenforceable*

As previously mentioned, Anest also complains that Walgreens referred to the incentive payment as a "loan" in its motion papers. She contends that Walgreens effectively changed the terms of the agreement when it referred to the incentive payment as a loan. We disagree. The actual terms of the agreement remained unchanged, and Walgreens merely sought to enforce the agreement according to its terms. As relevant here, those terms required Anest to repay the entire incentive payment if she failed to remain continuously employed by Walgreens for a period of three full years. Particularly with no cogent argument from Anest on this issue, we find that, regardless of how Walgreens characterized the payment in its motion papers, the relevant issue in this case is whether Walgreens was entitled to enforce the agreement according to its terms. For the reasons explained herein, we find that it was.

Anest also argues the agreement is unenforceable. To support this argument, she cites Civil Code sections 1550 and 1572, but she does not discuss either section or explain how they apply here.[3] She also cites *Yoo v. Jho* (2007) 147 Cal.App.4th 1249 for the proposition that illegal contracts are void and courts will not enforce them, but she fails to explain how or why the agreement in this case is illegal. As noted above, "an appellant is required to not only cite to valid legal authority, but also explain how it applies in his case," (*Hodjat v. State Farm Mutual Automobile Ins. Co., supra*, 211 Cal.App.4th at p. 10), and Anest fails to provide such an explanation, thus we decline to address it. (*Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [when a point is asserted without argument and authority for the proposition, an appellate court may deem

---

[3]    Civil Code section 1550 provides the essential elements of a contract are (1) parties capable of contracting, (2) their consent, (3) a lawful object, and (4) consideration, and Civil Code section 1572 defines types of fraud.

10

it to be without foundation and need not discuss it].)

       *D.     The circumstances of Anest's termination are not before us*

Anest cites *Kelecheva v. Multivision Cable T.V. Corp.* (1993) 18 Cal.App.4th 521, 531, for the proposition that California law implies into all contracts a covenant of good faith and fair dealing "which requires that neither party do anything to deprive the other of the benefits of the agreement." She then argues—with no citation to authority—that this means, "In California, employers are obligated to keep employees employed, as long as the terms of the contract are being met by both parties." That is not the law in California. Instead, there is a presumption in California that employment is at will, and may be terminated by either party, at any time, for any or no reason. (See Lab. Code, § 2922; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 335.) The agreement in this case incorporates this presumption by providing, "This agreement is not a contract or guarantee of employment for a definite period. As always, either Pharmacist or Walgreens may terminate the employment relationship for any reason, at any time, with or without cause or notice (i.e., 'at-will')." To the extent Anest argues Walgreens impliedly promised to employ her for three years, this argument is belied by the terms of the agreement. Anest asserts an employer cannot terminate an employee in bad faith or for discriminatory reasons. This may be true, but it is irrelevant because she points to no evidence in the record that suggests Walgreens terminated her in bad faith or for discriminatory reasons, and she did not oppose the summary judgment motion on this basis.

Anest appears to suggest that because Walgreens terminated her employment, it caused or initiated any breach of the agreement, and it thus should not be able to recoup the incentive payment. She cites no legal authority to support this suggestion, and the agreement provides she is obligated to repay the entire incentive payment amount if she "leaves Walgreens (for any reason)" before completing three years of employment. Leaving because she was terminated by Walgreens is "any" reason.

*E.      Anest has not proven a violation of Labor Code 970*

Anest cites Labor Code section 970, which provides, "No person . . . shall influence, persuade, or engage any person to change from one place or another in this State . . . for the purpose of working in any branch of labor, through or by means of knowingly false representations . . . concerning . . .  [¶]  . . . [t]he kind, character, or existence of such work . . . [or]  [¶]  . . . [t]he length of time such work will last, or the compensation therefore."  This section "prohibits employers from inducing employees to relocate and accept employment by way of knowingly false representations regarding the kind, character, or existence of work, or the length of time such work will last."  (*White v. Smule, Inc.* (2022) 75 Cal.App.5th 346, 349.)  Anest also cites Labor Code section 972, which provides for double damages in a civil action brought for violation of Labor Code section 970.  She fails to explain, however, how either Labor Code section is relevant because it does not appear she filed an action against Walgreens for violating section 970.  She may contend Walgreens violated section 970 by enticing her to move from Los Angeles to the Chico area in anticipation of at least three years of work, and then terminating her after only 21 months.  However, she points to no evidence in the record that suggests Walgreens induced her to move by means of knowingly false representations that she would be employed for at least three years, and, again, the agreement clearly states, "This Agreement is not a contract or guarantee of employment for a definite period.  As always, either Pharmacist or Walgreens may terminate the employment relationship for any reason, at any time, with or without cause or notice (i.e., 'at-will')."

*F.      Whether the repayment portion of the agreement is an unenforceable liquidated damages clause is not before us*

Anest cites Civil Code section 1671, subdivision (b), which provides "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable

12

under the circumstances existing at the time the contract was made." Anest argues the provision in the agreement requiring her repay the incentive payment if she did not fulfill the required three years of employment is an unenforceable liquidated damages provision. We need not consider this argument because Anest did not raise it in opposition to the motion for summary judgment, and as a general rule, an appellant cannot raise a new argument for the first time on appeal. (See *Christina C. v. County of Orange* (2013) 220 Cal.App.4th 1371, 1383; *L. Byron Culver & Associates v. Jaoudi Industrial & Trading Corp.* (1991) 1 Cal.App.4th 300, 306, fn. 4.) Even if she had raised this argument below, we would reject it for two reasons. First, Civil Code section 1671, subdivision (b) provides a liquidated damages provision is "valid" unless the party seeking to invalidate it establishes it was unreasonable at the time the contract was made, and Anest never addresses whether the challenged provision was unreasonable. Second, and more importantly, we find the challenged provision is not a liquidated damages provision—i.e., it does not liquidate (i.e., predetermine or set in advance) damages for breach of the agreement. Instead, it provides Walgreens agrees to pay Anest a $35,000 incentive payment, and Anest agrees to repay the full amount if she does not remain employed by Walgreens for three full years (and we note that failing to remain employed is not a breach of the agreement).

G. *Anest's argument regarding damages is not before us*

Anest cites *Schachter v. Citigroup, Inc., supra*, 47 Cal.4th at page 622 for the proposition that, " 'If the employee is discharged before completion of all the terms of the bonus agreement, and there is not valid cause, based on the conduct of the employee, for the discharge, the employee may be entitled to recover at least a pro-rata share of the promised bonus.' " She does not discuss *Schachter* further or explain how it applies in this case. To the extent she argues she is entitled to a pro rata share of the incentive payment, there are at least two problems with this argument. First, and fatally, she did not raise it below in opposition to the summary judgment motion, and, as just noted, a

13

party may not seek reversal of summary judgment by raising for the first time on appeal an argument not raised in the trial court. (See *Christina C. v. County of Orange, supra*, 220 Cal.App.4th at p. 1383.) Second, even if she had raised the issue below, she fails to establish she is entitled to a pro rata share of the incentive payment. The quote from *Schachter* states an employee may be entitled to a pro rata share of a promised bonus if he or she is discharged " 'and there is not valid cause.' " (*Schachter*, at p. 622.) Anest, however, submitted no evidence in opposition to the summary judgment motion that explains why she was discharged, much less that she was discharged without a valid cause. Moreover, the quote from *Schachter* is actually a quote from the Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE) Policies and Interpretations Manual, and the DLSE manual, in turn, cites a June 3, 1987, opinion letter, which provides, in full:

> "1. A bonus plan may provide payments to be made only to those plan participants who are actively employed on a bonus payment date. However, there are always questions of substantial performance and questions relating to the services required to earn the bonus. The Division accepts on a case-by-case basis claims for bonus, or a partial bonus, on the basis of substantial performance when termination takes place before the bonus is paid out. Each case is analyzed on its own facts to determine if a bonus or partial bonus is appropriate.

> "2. The cause of termination may be a factor even though the main question is whether the employee earned the bonus or a portion of it. There are situations where the employee terminates a relationship when he/she may have good cause for resigning or when there are factors beyond his/her control which may affect his/her eligibility for the bonus.

> "I am aware that the above answers are not definitive; however, as bonus plans have so many variables as to qualifying performance and how amounts are calculated, I can only give you answers in general terms. It is our policy to look at disputed claims for bonuses on a case-by-case

basis; each claim must be reviewed on its merits." (DLSE Opn. Letter No. 1987.06.03 (June 3, 1987) p. 1 <https://www.dir.ca.gov/dlse/opinions/1987-06-03.pdf [as of July 24, 2023], archived at < https://perma.cc/Y5EN-PUX7>.)

As this letter shows, the issue of whether an employee might be entitled to a pro rata share of a bonus is fact intensive and must be decided on a case-by-case basis, and is thus particularly inappropriate to raise for the first time on appeal.

Anest's final argument has something to do with the fact that Walgreens withheld $2,677.50 from her incentive payment to make FICA payments, and deducted this from the $35,000 she owed, resulting in a balance due of $32,322.50. Because she fails to explain how or why this fact demonstrates the trial court erred in granting Walgreens' motion for summary judgment, we disregard this argument.

The bottom line is that it is undisputed Anest signed an agreement pursuant to which Walgreens would immediately pay her a $35,000 incentive payment, but if she did not remain continuously employed by Walgreens for three years, she was required to repay the full amount. It is also undisputed Anest did not remain continuously employed by Walgreens for three years, and was thus required by the terms of the agreement to repay the incentive payment. We find the agreement is enforceable according to its terms, and we thus also find the trial court properly granted Walgreens' motion for summary judgment.

15

# DISPOSITION

The judgment is affirmed, and each side will bear its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


<u>            /s/                    </u>
EARL, P. J.



We concur:



<u>        /s/                    </u>
HULL, J.



<u>        /s/                    </u>
RENNER, J.