Filed 4/19/22  Chow v. Leyba CA2/7

## **NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LINDSEY CHOW, | B307432 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC648838) |
| v. | |
| MA LEYBA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed.

Lindsey Chow, in pro. per., for Plaintiff and Appellant.

William Chow, in pro. per., for Defendant and Respondent.

La Follette, Johnson, DeHaas, Fesler & Ames, Janee M. Tomlinson and David J. Ozeran for Defendants and Respondents.

————————————

Henry Chow was brought to the emergency room at St. Vincent Medical Center on October 31, 2015, where he was treated and then admitted to the hospital.  He died on November 6, 2015, one day after his son, William Chow, agreed to make his father a DNR (do not resuscitate) patient.  On January 31, 2017 Susan Chan Chow, Henry Chow's wife, and Lindsey Chow,[1] his daughter, filed this wrongful death and survival action, alleging medical negligence and related tort claims.  Ultimately, following a series of demurrers and amended pleadings, as well as Susan's death, the trial court granted St. Vincent's motion for summary judgment and entered judgment in favor of St. Vincent finding Lindsey, who was representing herself, had failed to demonstrate a triable issue of fact whether St. Vincent had failed to meet the standard of care in treating Henry or St. Vincent's care was the cause of Henry's injury or death.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Henry Chow's Hospitalization and Death*

Henry, 77 years old, was brought to the St. Vincent emergency room on October 31, 2015 complaining of shortness of breath and chest pain.[2]  He was given an electrocardiogram and intubated for respiratory distress.  After intubation Henry experienced severe bradycardia and suffered cardiac arrest.  He

---

[1]     We hereafter refer to members of the Chow family by their first names to avoid repetition.

[2]     Our description of Henry's hospitalization and the events preceding his death is based on St. Vincent's separate statement of undisputed material facts in support of its motion for summary judgment.  None of these facts was disputed in Lindsey's separate statement in opposition to the motion.

was revived through administration of cardiopulmonary resuscitation (CPR). Henry was then transferred to a catheterization laboratory where an intra-aortic balloon catheter was inserted and angioplasty attempted.

The catheterization laboratory determined Henry had "[s]evere multiple vessel coronary artery disease," and his medical history showed diabetes, acute kidney failure, acute respiratory failure and aspiration pneumonia. A preliminary cardiac consultation performed on October 31, 2015 concluded Henry's prognosis was "very poor": "Mr. Chow has had [a] massive myocardial infarction. He has multivessel heavily calcified coronary stenosis and is presently in cardiogenic shock." Henry was transferred to the intensive care unit, where he remained until his death on November 6, 2015. During that time he was seen by a variety of medical specialists, including nephrology, cardiology, pulmonology and infectious disease physicians.

On November 5, 2015 an emergency "code blue" was called for Henry. CPR was again administered, and he was given three rounds of epinephrine. Henry regained a weak pulse. He was returned to a ventilator and treated once more with vasopressors. Following the code blue, Dr. Tao Nguyen, the hospitalist who had responded, discussed Henry's situation with William. William agreed to make Henry a DNR patient and signed the appropriate form. The DNR order instructed health care providers to allow a natural death and provide a comfort-focused treatment. Henry died on November 6, 2015. The final diagnosis was acute myocardial infarction, cardiogenic shock, acute kidney injury, diabetes mellitus, acute diastolic heart failure, aspiration pneumonia and sepsis.

2. *Lindsey's Lawsuit*

Lindsey and Susan, representing themselves, filed their original complaint on January 31, 2017, asserting causes of action for wrongful death, medical malpractice, negligence, "survival" (a claim under Code of Civil Procedure section 377.30 for damages suffered by Henry before his death) and false imprisonment arising from Henry's hospitalization and death. Their principal allegation was that care had been improperly withdrawn from Henry, who was allowed to die. Lindsey and Susan named as defendants Ma Leyba, a nurse who provided care for Henry; Dr. Nguyen; St. Vincent; and Verity Health System of California, a nonprofit health care organization that operated St. Vincent, among other hospitals.

After demurrers by the defendants to some, but not all, of the causes of action were sustained with leave to amend, Lindsey and Susan filed a first amended complaint, which added additional causes of action for elder abuse and intentional and negligent infliction of emotional distress. St. Vincent, Verity Health and Leyba's demurrers to the negligence and survival causes of action were sustained without leave to amend. The elder abuse and intentional infliction of emotional distress causes of action were struck as improperly added without leave of court. Demurrers to other causes of action were sustained with leave to amend.

The second amended complaint alleged causes of action for wrongful death, medical malpractice, negligent infliction of emotional distress and false imprisonment. St. Vincent, Verity Health and Leyba's demurrers to the cause of action for false imprisonment were sustained without leave to amend.

4

Demurrers to other causes of action were once again sustained with leave to amend.

On January 31, 2018 Lindsey and Susan moved for leave to amend their complaint to include a claim for punitive damages and new causes of action for medical battery, malfeasance and violation of informed consent. The court denied the motion.

On February 16, 2018 Lindsey and Susan filed amendments to their pleading naming eight physicians and nurses in place of Doe defendants, and on February 23, 2018 filed a third amended complaint alleging causes of action for wrongful death, medical malpractice, negligent infliction of emotional distress, false imprisonment and survival. New demurrers and motions to strike were filed. The court struck the false imprisonment cause of action against St. Vincent, Verity Health and Leyba. To the extent other demurrers were sustained, Lindsey and Susan were given leave to amend.

On March 23, 2018 Lindsey and Susan named William as a nominal defendant in place of Doe 9.

On May 29, 2018 Lindsey and Susan filed a fourth amended complaint (the operative pleading) with four causes of action: wrongful death, medical malpractice, negligent infliction of emotional distress and survival. St. Vincent demurred to the cause of action for negligent infliction of emotional distress. The other defendants demurred to all the causes of action. All defendants moved to strike the causes of action for medical malpractice and survival on the ground Susan, Henry's successor in interest, could not maintain those causes of action in propria persona. While the demurrers and motions to strike were pending, Lindsey and Susan moved for leave to file a fifth amended complaint to add a number of new causes of action,

5

including intentional torts and violation of religious freedom. The court denied the motion.

On June 17, 2019, following Susan's death several months earlier, Lindsey moved to substitute herself as Henry's successor in interest.[3] The defendants opposed the motion, arguing a self-represented party who is not an attorney cannot appear as successor in interest and could not maintain Henry's survival and medical malpractice causes of action. The motion was denied without prejudice on July 22, 2019 (permitting the substitution if Lindsey retained an attorney).

Following argument the trial court sustained St. Vincent's demurrer to the cause of action for negligent infliction of emotional distress with leave to amend as to Lindsey and without leave to amend as to Susan. St. Vincent's motion to strike the claim for punitive damages was granted. St. Vincent's motion to strike the medical malpractice and survival causes of action based on Lindsay's self-represented status was denied on the ground she still had the option of retaining counsel to pursue those claims on Henry's behalf. The demurrers of all other defendants as to all causes of action were sustained without leave to amend. Lindsey elected not to further amend.

---

[3] The lawsuit was stayed between September 10, 2018 and July 19, 2019 as a result of bankruptcy proceedings involving St. Vincent and Verity Health. Granting relief from the automatic stay, the bankruptcy court stated, "The State Court is the forum best suited to adjudicate Movants' claims, which all arise under non-bankruptcy law. Further, the State Court is already intimately acquainted with this matter, having ruled upon multiple Demurrers and Motions to Strike filed by the Debtors."

6

On November 26, 2019 St. Vincent, the only defendant still in the lawsuit, filed its answer to the fourth amended complaint, responding to the remaining causes of action for wrongful death, medical malpractice and survival. (The answer noted the causes of action for negligent infliction of emotional distress and false imprisonment, alleged in the fourth amended complaint, had been dismissed by the court.)

3. *St. Vincent's Motion for Summary Judgment*

St. Vincent moved for summary judgment on January 29, 2020, contending the medical care and treatment provided Henry met the standard of care and did not cause injury to him or his death. St. Vincent submitted with its motion the declaration of Andrew Wachtel, M.D., a board certified physician in internal medicine and pulmonary disease.

Dr. Wachtel explained he had reviewed Henry's medical records from St. Vincent beginning with Henry's arrival at the hospital on October 31, 2015 and opined the care and treatment Henry received in the emergency room met the standard of care: "The medical issues he presented with were properly and timely addressed, and proper medical interventions were undertaken. Furthermore, no act or omission on the part of hospital personnel while Mr. Chow was in the emergency room caused or contributed to his death on November 6, 2015." After describing Henry's treatment in the catheterization laboratory and the ICU following his transfer from the emergency room, Dr. Wachtel further opined that Henry "received extensive and appropriate care during his stay in the ICU." Dr. Wachtel then opined that, following the code blue on November 5, 2015, administration of CPR, use of epinephrine and placement of Henry back on a ventilator, "it was apparent that Mr. Chow was going to die, and

7

nothing could be done to save him." "[I]t was appropriate and within the standard of care," according to Dr. Wachtel, "for Dr. Nguyen to issue the DNR order upon obtaining Mr. Chow's son's consent, and for the hospital staff to carry out that order, which it did appropriately and within the standard of care."

Summarizing his views, Dr. Wachtel opined, "[T]he medical staff at St. Vincent Medical Center met the standard of care in the medical treatment rendered to the decedent." In addition, he declared, "[t]o a reasonable medical probability, no act or omission on the part of hospital personnel or any medical provider caused Mr. Chow's condition to decline or his death." He concluded his declaration by stating, "[T]o a reasonable medical probability, the placing of Mr. Chow on a DNR did not cause his death, because to a reasonable medical probability, he was going to die shortly after the November 5, 2015 Code Blue regardless of whether he was on a DNR or not. In other words, Mr. Chow had reached the end of his life, and to a reasonable medical probability further resuscitative efforts were not going to extend his life."

Citing *Landeros v. Flood* (1976) 17 Cal.3d 399 and *Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93, St. Vincent argued, because it had submitted an expert declaration opining that it had met the standard of care when treating Henry and that to a reasonable medical probability placing him on a DNR did not cause his death, it was entitled to summary judgment unless Lindsey filed an expert declaration in opposition contradicting that opinion.

In her opposition papers Lindsey contended St. Vincent personnel had caused Henry's death by unlawfully unplugging his life support without his consent and against his desire, which

8

she characterized as murder and euthanasia, as well as elder abuse.  Lindsey submitted her own declaration, stating she was in Henry's room on the morning of November 6, 2015 and saw nurse Leyba sitting 12 to 20 feet away from Henry, not providing services, while Henry was gasping for air, unable to breathe.  The ventilator was unplugged, the heart monitor removed and all alarms were turned off.  According to Lindsey, her father's eyes were full of terror and fear.

4. *The Trial Court's Ruling*

Before turning to the merits of St. Vincent's motion, the trial court overruled Lindsay's objection to Dr. Wachtel's expert witness declaration, explaining, "[I]t appears to be an objection to his conclusion that 'no act or omission' caused the death on the grounds that such a declaration is not based on personal knowledge."[4]

Based on Dr. Wachtel's opinions, the court found St. Vincent had submitted competent evidence that its medical personnel had not breached a duty of care or caused Lindsey damages or Henry's death, carrying its initial burden on summary judgment.  Lindsey, in contrast, failed to carry her burden.  "Plaintiff failed to submit admissible competent evidence creating a triable issue of fact as to Defendant's submitted evidence that Defendant met the standard of care and that Defendant's care of Decedent was not the cause of Decedent's injury or death."  Emphasizing that Lindsey did not submit an expert declaration controverting the opinions of Dr. Wachtel and

---

[4]    The court also noted that Lindsey's objection violated California Rules of Court, rule 3.1354(b) because it was included within her opposition memorandum, rather than having been filed separately.

9

ruling inapplicable the "common knowledge" exception to the general requirement that expert testimony is needed in medical malpractice cases, the court found Lindsey's declaration did not constitute competent evidence: "Plaintiff's arguments in opposition that Defendant's treatment of Decedent constituted 'intentional murder' as opposed to negligence, whether conduct of Defendant's staff caused Decedent's death, and arguments relating to the DNR order and taking Decedent off the ventilator are irrelevant to her burden in opposing Defendant's motion for summary judgment, for which she must submit expert testimony in support of her assertions."

Judgment was entered in favor of St. Vincent on July 24, 2020. On the same date, but in a separate document, judgment was entered in favor of Verity Health and various individual defendants. William was dismissed from the action on July 24, 2020 for failure to prosecute pursuant to Code of Civil Procedure section 583.240, subdivision (a)(1).

Lindsey filed a timely notice of appeal, which appears to be limited to the judgment entered in favor of St. Vincent.

## DISCUSSION

1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant may bring a motion on the ground the plaintiff cannot prove one of the required elements of the case or there is a complete defense to the action. (Code of Civ. Proc., § 437c, subds. (*o*)(1), (2) & (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

10

To carry its initial burden when the motion is directed to the plaintiff's case rather than an affirmative defense, the defendant must present evidence that either negates an element of the plaintiff's cause of action or shows that the plaintiff does not possess, and cannot reasonably obtain, evidence necessary to establish at least one element of the cause of action.  (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at pp. 853-854.)  Only after the defendant carries that initial burden does the burden shift to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto."  (Code Civ. Proc., § 437c, subd. (p)(2).)

We review a grant of summary judgment de novo (*Samara v. Matar* (2018) 5 Cal.5th 322, 338) and, viewing the evidence in the light most favorable to the nonmoving party (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618), decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law.  (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

2.  *Medical Negligence and the Need for Expert Testimony*

"Generally, 'negligence' is the failure to exercise the care a reasonable person would exercise under the circumstances. [Citation.]  Medical negligence is one type of negligence, to which general negligence principles apply."  (*Massey v. Mercy Medical Center Redding* (2009) 180 Cal.App.4th 690, 694.)  "The elements of a medical malpractice claim are: ""(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection

11

between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.""" (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 468, fn. 2.) "Both the standard of care and [a defendant's] breach must normally be established by expert testimony in a medical malpractice case." (*Id.* at p. 467.)

"Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts' [citation], expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard prevailing of care' unless the negligence is obvious to a layperson." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305; accord, *Landeros v. Flood, supra,* 17 Cal.3d at p. 410 ["'[t]he standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman'"].)[5] Similarly, "'[c]ausation must be proven within a

---

[5] The Supreme Court in *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001, discussed a medical malpractice plaintiff's need for expert testimony to oppose summary judgment and the obvious-to-a-layperson (common knowledge) exception to that requirement: "'"The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman." [Citations.]' [Citations.] The 'common knowledge' exception is principally limited to situations in which the plaintiff can invoke the doctrine of res ipsa loquitur, i.e.,

12

reasonable medical probability based upon competent expert testimony.'" (*Dumas v. Cooney* (1991) 235 Cal.App.3d 1593, 1603; see *Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1542 ["[a]s a general rule, the testimony of an expert witness is required in every professional negligence case to establish the applicable standard of care, whether that standard was met or breached by the defendant, and whether any negligence by the defendant caused the plaintiff's damages"]; see also *Bromme v. Pavitt* (1992) 5 Cal.App.4th 1487, 1492-1493 ["a plaintiff who alleges a

_____

when a layperson 'is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised.' [Citations.] The classic example, of course, is the X-ray revealing a scalpel left in the patient's body following surgery. [Citation.] Otherwise, "'expert evidence is conclusive and cannot be disregarded."'" (Fn. omitted.)

Nothing in the trial court record would support a finding the proper treatment of a DNR patient with Henry's multiple problems falls within this common knowledge exception to the need for expert testimony in a medical malpractice case. (See *Bardessono v. Michels* (1970) 3 Cal.3d 780, 792-793 [jury could rely on common knowledge where alleged malpractice did not involve a complex procedure, but rather a simple treatment for commonplace problem where untoward, extremely rare result occurred]; *Davis v. Memorial Hospital* (1962) 58 Cal.2d 815, 818 [trial court erred in failing to instruct jury on res ipsa loquitur when it was matter of common knowledge that procedure is not ordinarily harmful in the absence of negligence]; see also *Curtis v. Santa Clara Valley Medical Center* (2003) 110 Cal.App.4th 796, 801 ["[t]he more complex or unusual the medical process, the more likely it is that expert testimony will be required to establish whether or not the injury was the result of negligence"].)

13

statutory cause of action for wrongful death arising from medical negligence must prove by reasonable medical probability based on competent expert testimony that a defendant's acts or omissions were a substantial factor in bringing about the decedent's death"].)

"'Whenever the plaintiff claims negligence in the medical context, the plaintiff must present evidence from an expert that the defendant breached his or her duty to the plaintiff and that the breach caused the injury to the plaintiff.'" (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 153.) A medical malpractice defendant who supports a summary judgment motion with applicable expert declarations "'is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.'" (*Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977, 985.)

3. *Lindsey Failed To Demonstrate a Triable Issue of Material Fact as to St. Vincent's Breach of Duty, an Essential Element of Her Causes of Action*

In appellate briefs devoid of any citation to the record (see generally Cal. Rules of Court, rule 8.204(a)(1)(C) [any reference to a matter in the record must be supported by a specific citation]), Lindsey contends the motion for summary judgment was improperly granted because St. Vincent's medical personnel committed a deliberate act of euthanasia (murder) outside the standard of care. Although we do not question the depth of Lindsey's anguish over the death of her father, because she failed to present expert medical testimony in opposition to St. Vincent's motion, her briefs fail to provide any ground for reversal of the trial court's judgment.

Lindsey advances four basic arguments in her briefs. First, asserting murder is not mere negligence, Lindsey contends her

14

declaration described deliberate acts intended to kill Henry (unplugging the ventilator, removing the heart monitor and turning off alarms); and she suggests, as a consequence, well-established rules governing medical malpractice cases are somehow inapplicable to her lawsuit. Lindsey's argument misperceives the nature and elements of her causes of action for wrongful death and medical malpractice. (The survival action is simply Henry's claim for malpractice.) As to each, the issue is not whether St. Vincent's actions were deliberate or accidental—there is no dispute they were intentional—but whether they were performed in accordance with the applicable standard of care and, therefore, not tortious or otherwise wrongful.[6] Dr. Wachtel testified they complied with that standard, based on his review of Henry's medical records, as well as Dr. Wachtel's own extensive training and experience. As discussed, absent an expert declaration contradicting Dr. Wachtel's opinion, that evidence is conclusive; and the trial court was required to grant St. Vincent's motion.

---

[6] To reiterate, breach of duty and causation are essential elements of a claim for medical negligence (malpractice). (See, e.g., *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 509 [a medical malpractice plaintiff "must show that defendants' breach of the standard of care was the cause, within a reasonable medical probability, of his injury"].) Similarly, the elements of a wrongful death cause of action directed to a health care provider include "(1) a 'wrongful act or neglect' on the part of one or more persons that (2) 'cause[s]' (3) the 'death of [another] person' [citation]—on legal theories of negligence and strict liability." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 390.)

15

Lindsey's challenge to the admissibility of Dr. Wachtel's declaration because he did not have personal knowledge of Henry's treatment, relying instead on Henry's medical records, is misplaced. "Expert opinion testimony may be based upon information furnished to the expert by others so long as the information is of a type reasonably relied upon by professionals in the relevant field." (*Olive v. General Nutrition Centers, Inc.* (2018) 30 Cal.App.5th 804, 821; accord, *Zuniga v. Alexandria Care Center, LLC* (2021) 67 Cal.App.5th 871, 887; see Evid. Code, § 801, subd. (b) [expert opinion may be based on matter, including the expert's experience, training and education, perceived by or personally known to the witness, "or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon which the subject to which his testimony relates"].) Henry's medical records were submitted with St. Vincent's motion papers, authenticated by the custodian of medical records for St. Vincent, and properly before the trial court as business records within the meaning of Evidence Code section 1271. "They are the type of records on which medical experts may and do rely in order to give expert testimony in a medical malpractice case." (*Wicks v. Antelope Valley Healthcare Dist.* (2020) 49 Cal.App.5th 866, 876; see *Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 506 ["The court found in its order of May 14, 2010, that the medical records in support of Dr. Warren's motion were properly authenticated. Accordingly, the foundational facts and medical records on which Dr. Ostegard relied as stated in his declaration were before the court to support his expert opinion"].)

16

Lindsey also argues summary judgment should have been denied because the bankruptcy court, when lifting the automatic stay of the case imposed following Verity Health's bankruptcy filing in September 2018, found her claims had merit. The bankruptcy court made no such finding, as the trial court explained when rejecting this same contention. The bankruptcy court noted that Lindsey and Susan alleged the debtors "euthanized Henry . . . as a cost-saving measure"—language that Lindsey quotes without indicating it was a description of her allegation—but ruled only that state court, not federal bankruptcy court, was the forum better suited to adjudicate Lindsey's state law claims.

Finally, Lindsey contends Henry's death certificate, which stated the immediate cause of death was cardiogenic shock and acute myocardial infarction, established that Henry did not die from natural causes. But the meaning of those medical terms in the context of an evaluation of St. Vincent's treatment and care of Henry, just as Lindsey's claims that St. Vincent's conduct violated various federal laws regarding euthanasia and constituted Medicare fraud, required expert testimony. In the absence of expert testimony, St. Vincent was entitled to summary judgment.

## DISPOSITION

The judgment is affirmed.  St. Vincent is to recover its costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.